IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

WREMBUREN JONES                                                                                    PLAINTIFF

v.                                              Civil No. 1:18-cv-01045

DR. JOSEPH DELUCA, Ouachita
County Detention Center ("OCDC");
NURSE SHERYL MENDENHALL,
OCDC; and JAMES BOLTON, Jail
Administrator, OCDC                                                                              DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Wremburen Jones, under 42 U.S.C. § 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Dr. Joseph DeLuca, Nurse Sheryl Mendenhall, and Jail Administrator James Bolton. (ECF No. 17).  Plaintiff has filed a Response. (ECF No. 24).  Defendants have filed a Reply.  (ECF No. 27).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

## I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Garland County Detention Center in Hot Springs, Arkansas.  Plaintiff's claims in this action arise from alleged incidents that occurred while he was incarcerated in the Ouachita County Detention Center ("OCDC") in Camden, Arkansas in 2016.

Plaintiff was booked into the custody of the OCDC on April 10, 2016 and released September 8, 2016.  (ECF No. 19-2, p. 2).  During this time Defendant DeLuca was under contract with Ouachita County to provide medical evaluation and treatment for the OCDC's detainees.  (ECF No. 19-6, p. 1).  Defendant Bolton was the Jail Administrator for the OCDC, (ECF No. 21-

1, p. 1), and Defendant Mendenhall was the staff nurse for the OCDC. (ECF No. 19-6, p. 1).

On the same day Plaintiff was booked in to the OCDC, April 10, 2016, he was medically evaluated by Dr. Carlos Quintero at the Ouachita County Medical Center. (ECF No. 19-4, pp. 2-5). Plaintiff was diagnosed with a par lumbar muscle strain, prescribed the medication Flexeril,[1] and instructed to follow up with Defendant DeLuca within two to three days for continuance of care. *Id.* The following day, Plaintiff's medications - Flexeril, Omeprazole, Gabapentin, and Procardia - were approved to be administered while Plaintiff was in the custody of the OCDC. (ECF No. 19-4, p. 6). The medication bottles (except for Flexeril) showed Defendant DeLuca as the prescribing physician. *Id.*[2]

On April 14, 2016, Plaintiff submitted an Inmate Medical Request regarding his back pain. In response to Plaintiff's request, Defendant Mendenhall informed Plaintiff he was currently being provided medications to help alleviate his back pain and Defendant DeLuca had been informed Plaintiff was in the custody of the OCDC. (ECF No. 19-5, p. 2).

On April 15, 2016, Plaintiff submitted an Inmate Grievance stating, "teeth hurting and swollen, need dentist appointment asap please." In response Defendant Bolton informed Plaintiff he would need to submit a medical request to have his teeth evaluated. (ECF No. 19-3, p. 2).

On April 18, 2016, Plaintiff requested an appointment with Defendant DeLuca to discuss his current medications. Defendant Mendenhall informed Plaintiff she would let Defendant DeLuca know he wanted to see him. (ECF No. 19-5, p. 2).

---

[1] Flexeril is used short-term to treat muscle spasms. It is usually used along with rest and physical therapy. It works by helping to relax the muscles. (ECF No 19-4, p. 4).

[2] Defendants' Statement of Facts indicates Plaintiff was also prescribed Tramadol and penicillin when he was booked into the OCDC on April 10, 2016. (ECF No. 19, p. 1). However, the medical records submitted to the Court do not mention either of these medications.

On April 21, 2016, Plaintiff requested a visit with Defendant DeLuca to discuss his medications. (ECF No. 19-4, p. 13). On May 5, 2016, Defendant DeLuca noted in Plaintiff's medical file to "continue current medications as directed." *Id.*

On May 13, 2016, Plaintiff submitted an Inmate Grievance and medical Request stating, "Medical-ATTENTION-BEING-DENIED. SPEAK-WITH-SHERIFF-NORWOOD." In response, Defendant Bolton informed Plaintiff he was on the list to be evaluated by the doctor. (ECF No. 19-3, p. 2).

On May 18, 2016, Plaintiff again requested to have his back evaluated by Defendant DeLuca. Defendant Mendenhall presented the request to Defendant DeLuca who noted in Plaintiff's medical file "nothing for back pain." (ECF No. 19-4, p. 14).

On May 26, 2016, Plaintiff submitted an Inmate Medical Request stating, "I've been here for almost 2 months n constant pain daily. I would like too see doctor and stop getting lied too about being put on wait list." (ECF No. 19-5, p. 3). Defendant Mendenhall responded stating, "Mr. Jones no one is lying to you. You have been on the list for the Doctor to see. I cannot make him see you. He decides who he will see during his time here. I will place you on the list again." *Id.*

On May 31, 2016, Plaintiff submitted an Inmate Grievance stating, "I would like to appeal my last grievance, because I'm being denied medical attention. Would like for this issue to be resolved as soon as possible." (ECF No. 19-3, p. 3). Defendant Bolton responded stating, "You have been placed on the Dr. list. He chooses who he sees. It might help if you would send a Medical Request with some details of your medical problems." *Id.*

On June 1, 2016, Plaintiff submitted an Inmate Medical Request stating, "I am having constant and sever lower back pain on a daily basis." (ECF No. 19-5, p. 3). Defendant Mendenhall

3

responded informing Plaintiff "you are on the list." *Id.*

On June 2, 2016, Plaintiff again requested to see Defendant DeLuca for back pain. (ECF No. 19-4, p. 15). Defendant Mendenhall presented the request to Defendant DeLuca. The following day, Defendant DeLuca noted in Plaintiff's medical file "nothing for back pain." *Id.*

On June 8, 2016, Plaintiff submitted an Inmate Medical Request stating, "would like to see doctor concerning constant and severe lower back pain that has been going on for two months." (ECF No. 19-5, p. 3). Defendant Mendenhall responded stating, "I will let him know again." *Id.*

On June 19, 2016, Plaintiff submitted an Inmate Grievance stating, "would like opportunity to visit dentist immediately, have toothache; and need tooth pulled. Thank you." (ECF No. 19-3, p. 5). Defendant Bolton responded two days later indicating "appointments are being scheduled." *Id.*

On July 3, 2016, Plaintiff submitted an Inmate Grievance stating, "I've put in numerous requests; concerning having extremely and severly lower back pain on a daily basis. Could you please allow me to see doctor. Thank you very much." (ECF No. 19-3, p. 5). Defendant Bolton responded the following day telling Plaintiff again he was on the "Dr. list to see." *Id.*

On July 23, 2016, Plaintiff submitted an Inmate Medical Request stating, "would like to visit doctor about these constant and severe lower back pain that I'm enduring on a daily basis. It has gotten were im hurting and pain is shooting all down my legs daily." (ECF No. 19-5, p. 5). Defendant Mendenhall responded four days later stating, "I will place you on the list." *Id.*

On July 26, 2016, Plaintiff was evaluated for "my abscessed molar. Which is my mouth and Face. Cause of my bad teeth hurting. I was prescribed penicillin. So, that it would get the swelling out. But I still had not seen a dentist….penicillin is not for pain. I wasn't given any pain medication …nor have I seen, the dentist as promised by Jail Administrator, James Bolton…"

4

(ECF No. 1, p. 10).

Plaintiff's medical records indicate Plaintiff was seen on July 28, 2016, in the OCDC medical clinic for back pain shooting down his legs. (ECF No. 19-4, p. 7). A physician, presumably Defendant DeLuca, noted that day under Physician's Findings and Orders "Nothing else." *Id.* However, Plaintiff specifically disputes he was seen by Defendant DeLuca on this day. (ECF No. 1, p. 6 and ECF No. 24).

On August 4, 2016, Plaintiff submitted an Inmate Medical Request stating, "would like to see doctor concerning these severe burning and constant pains in my back daily. It has gotten were severe pains are through my legs as well this has affected my walking ability." (ECF No. 19-5, p. 5). Defendant Mendenhall responded the following day telling Plaintiff he was on the list to be evaluated by the doctor. *Id.* That same day, Plaintiff submitted an Inmate Grievance stating, "I've been putting in numerous sick call requests; and grievances concerning my health issues and all I keep hearing is I'm being out on list to see doctor. This has been going on for four months." (ECF No. 19-3, p. 10). Defendant Bolton responded to Plaintiff's grievance as follows, "Mr. Jones, the nurse has given your file to the Medical director every time you have ask. The Dr. states he has nothing more to offer you than what you are already getting." *Id.*

On August 15, 2016, Plaintiff submitted an Inmate Grievance stating, "Sheryl Mendenhall; I've put in numerous requests to visit doctor concerning severly lower back pains, and burning in my back that has caused sharp pains to affect my legs and walking ability. All I've keep receiving is I am being put on a list to see doctor for 4 months; but to no avail. Thank you." (ECF No. 19-3, p. 12). Defendant Bolton responded two days later stating, "Mr. Jones, all we can do is put you on the list to see the Dr. He chooses who he sees." *Id.*

On August 18, 2016, Plaintiff submitted an Inmate Medical Request, stating, "would like

very much to see dr. concerning same issues concerning these severe and constant pains daily in my back and pains going through my legs. What more needs to be said." (ECF No. 19-5, p. 5). The following day Defendant Mendenhall stated, "I will place you on the list." *Id.* Plaintiff's medical records indicate he was evaluated that same day in the OCDC's medical clinic for his complaints of pain relating to his diagnosed lumbar strain. Defendant DeLuca did not prescribe anything for the pain. Instead he noted under the Physician's findings and orders "0 for pain Re-address when released." (ECF No. 19-4, p. 8). These notations were made on August 22, 2019. *Id.* Plaintiff specifically disputes he was seen by Defendant DeLuca on August 18, 2016. (ECF No. 1, p. 7). He states, "…I was not seen at the clinic at all on 8-18-16, that is a Falsified Document." *Id.*

On August 29, 2016, Plaintiff submitted an Inmate Grievance stating, "I requested way back in the month of June about pain in tooth and needed both pulled. Still need tooth extracted tired of pain and to top it off can't get a Tylenol." (ECF No. 10-3, p. 12). Defendant Bolton responded the next day noting, "You are on the dentist list." *Id.*

On August 30, 2016, Plaintiff submitted another Inmate Grievance concerning his requests to see a dentist stating, "yea, yea, been told going to receive dental treatment in june but that has remained to be seen.i don't have to be continually lied to each time i'm trying to receive medical attention that is urgent. In pain daily. (ECF No. 19-3, p. 12). In response Defendant Bolton informed Plaintiff "Dental appointments are scheduled." *Id.*

On September 2, 2016, Plaintiff submitted an Inmate Grievance stating, "I've not see doctor in 5 months I've been here; but all requests and grievances have been down right disregarded and ignored with nothing but outstanding lies. I've laid in this torture chamber daily in severe and excruciating pain…" (ECF No. 19-3, p. 13). Defendant Bolton responded that same

day stating, "Mr. Jones, Your name has been on the list to see the Dr. Every week. He chooses who he sees not us." *Id.*

According to Defendant Mendenhall's affidavit, once she informs Defendant DeLuca a detainee wants to see him and describes the nature of the request, Defendant DeLuca reviews the matter and then decides whether or not it is necessary for he or his nurse to see and/or examine the detainee. (ECF No. 19-6, p. 1). Defendant Mendenhall also states, she did not knowingly or intentionally prevent Plaintiff from seeing Defendant DeLuca or receiving reasonable and necessary medical treatment and medication. *Id.* at p. 2). She goes on to state, "At no time did I knowingly or intentionally disregard a serious medical condition of the Plaintiff while he was incarcerated at the detention center." *Id.* She also describes her job duties as follows:

> Dispense medication that has been ordered by Dr. Deluca (including over the counter medications), process medical requests from inmates, prepare the inmates' medical requests in a file to be presented to Dr. Deluca when he visits the detention center, schedule outside medical appointments when ordered by Dr. Deluca, request ADC approval of medical care, and order medications when prescribed by Dr. Deluca.

*Id.* at pp. 2-3. In addition, she states "I presented all of the Plaintiff's medical requests to Dr. Deluca." *Id.* at p. 3.

According to the affidavit of the current OCDC's Jail Administrator Cameron Owens, all matters of judgment regarding health services at the OCDC are made within the sole province of the contract medical staff and no employee of OCDC is authorized to make non-emergency medical decisions on behalf of any inmate. He goes on to state, "…all decisions regarding medication, medical testing, or medical treatment are left to the professional medical judgment of the physician at the detention facility." (ECF No. 21-1, pp. 1-2). Finally, he states the OCDC has no policy, practice, or custom that requires the physician to consult with any employee of the

OCDC before prescribing any medication, testing, or treatment.  *Id.*

Defendant DeLuca also submitted an affidavit stating before Plaintiff's incarceration at the OCDC, he treated Plaintiff in the outpatient setting for chronic low back pain at the Ouachita Valley Family Clinic with opioids, gabapentin, and tramadol.  (ECF No. 28-1, p. 1).  At the time of this treatment, Defendant DeLuca states he became suspicious Plaintiff was making false complaints so he would prescribe him opioids.  At that point, Defendant DeLuca stopped prescribing opioids and started prescribing tramadol to deter his drug seeking behavior.  *Id.*  Defendant DeLuca goes on to state he also saw Plaintiff on several occasions for his claim of chronic low back pain while he was jailed at the OCDC in 2016.  He states he informed Plaintiff he would not prescribe him opioids or narcotics due to his suspicions he was making false complaints.  *Id.*

During Plaintiff's incarceration in 2016, Defendant DeLuca states he continued to prescribe daily gabapentin for chronic low back [pain], an occasional Tylenol, and a one-time short course of cyclobenzaprine for acute low back muscle spasms but he declined to prescribe additional medications due to Plaintiff's history of drug abuse.  *Id.* at p. 2, (ECF No. 19-4, p. 37).  Defendant DeLuca also states, "On occasion, when the Plaintiff requested to see me for his backpain during his incarceration, I declined because I had already addressed his issues, prescribed him medications, and informed him that I would not be treating his back pain with opioids or narcotics."  (ECF No. 28-1, p. 2).  He goes on to state, "...The treatment provided to Plaintiff was medically appropriate and addressed the complaints he raised."  *Id.*

Plaintiff also submitted an affidavit stating in part, "…I did not receive a follow up as prescribed by emergency room physician..."  (ECF No. 24).  He also states he was never given the opportunity to see Defendant DeLuca while he was incarcerated in the OCDC in 2016, "not

8

even once." *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his verified Complaint on July 19, 2018, against Defendants Dr. Joseph DeLuca, Sheryl Mendenhall and James Bolton. (ECF No. 1). He is suing Defendants in both their personal and official capacities and is seeking compensatory and punitive damages. (ECF No. 1, p. 3).

Plaintiff alleges Defendant DeLuca denied him medical care when he refused to evaluate him during his incarceration in the OCDC after he was diagnosed at the Ouachita County Medical Center on April 10, 2016, as having a para lumbar muscle strain. He claims the hospital physician gave instructions to Plaintiff to "follow up" with Defendant DeLuca within a few days after he was released from the hospital. (ECF No. 1, p. 5). He goes on to state that despite numerous sick calls and grievances over a five-month period, Defendant DeLuca never saw him and instead simply denied his requests to see him and denied his requests for pain medication. He claims, "Dr. Joseph Deluca action have worsened my condit, and have me in unnecessary pain. *Id.* at p. 6.

Plaintiff also asserts a claim for denial of medical care against Defendant Bolton. He alleges Defendant Bolton failed to arrange for Defendant DeLuca to evaluate him for his back pain. *Id.* at p. 11. In addition, Plaintiff alleges he submitted multiple grievances and medical requests concerning a toothache and Defendant Bolton "ignored my immediate cry out for help. He didn't even try to get me pain medication, nor did he schedule me to see the DENTIST, For he had the authority too." (ECF No. 1, p. 9). He goes on to claim, "Bolton caused me to wait in pain. By not allowing me to see a dentist…" (ECF No. 1, p. 10).

Plaintiff also asserts claims against Defendant Mendenhall alleging she denied him medical

care when she refused to put him on the list to see Defendant DeLuca for his complaints of lower back pain. (ECF No. 1, pp. 13). Specifically, he claims "she made an unlawful decision to deprive me of the lawful right to see a license doctor…" *Id.* at p. 14.

On April 26, 2019, Defendants filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) Defendants were not deliberately indifferent to Plaintiff's medical needs; 2) the county Defendants – Bolton and Mendenhall are entitled to qualified immunity; and 3) there is no basis for official capacity/county liability. (ECF No. 17). On July 8, 2019, Plaintiff filed a Response in opposition to Defendants' motion in the form of an affidavit stating Defendants were deliberately indifferent to his serious medical needs "due to the fact he did not receive a follow up as prescribed by emergency room physician" and he was never examined by Defendant DeLuca during his incarceration in the OCDC in 2016. (ECF No. 24). On July 29, 2019, Defendants filed a Reply clarifying they had mistakenly included medical records for Plaintiff for 2017. (ECF No. 27). However, they argue Plaintiff was provided appropriate medical care and Plaintiff's disagreement with the care he was provided does not amount to deliberate indifference.

### IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A. Denial of Medical Care

Plaintiff alleges Defendants denied him medical care. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

Defendants do not dispute Plaintiff's medical issues relating to his par lumbar muscle strain and his dental pain are serious medical needs. Therefore, for purposes of this Report and Recommendation the Court will assume Plaintiff's conditions as described in his Complaint are serious medical needs and will address whether Defendants were deliberately indifferent to those needs.

**1. Defendant Bolton**

Plaintiff alleges Defendant Bolton denied him medical care when he failed to put him on the doctor's list to be seen by Defendant DeLuca and did not authorize him to be seen by a dentist.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate the named defendants violated the plaintiff's federal constitutional rights while

acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Although federal courts must view pro se pleadings liberally, such pleadings may not be merely conclusory. The complaint must allege facts, which if true, state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

At the time of the events in question, Defendant Bolton was the OCDC's Jail Administrator. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

In support of the instant motion for summary judgment, the current Jail Administrator for the OCDC, Cameron Owens submitted an affidavit stating in part:

> …All matters of judgment regarding health services are made within the sole province of the contract medical staff. No employee of Ouachita County Detention Center is authorized to make non-emergency medical decisions on behalf of any inmate…All decisions regarding medications, medical testing, or medical treatment are left to the professional medical judgment of the physician at the detention facility. Ouachita County Detention Center has no policy, practice, or custom that requires the physician to consult with any employee of the Ouachita County Detention Center before prescribing any medication, testing, or treatment.

(ECF No. 21-1).

Here, there is no summary judgment evidence Defendant Bolton was involved in providing medical care to Plaintiff nor is there any evidence to suggest Defendant Bolton had authority to make Plaintiff an appointment with a dentist or compel Defendant DeLuca to see him. Instead, the summary judgment record confirms on multiple occasions Defendant Bolton timely responded to Plaintiff's grievances and informed Plaintiff he had been placed on the list to see Defendant DeLuca and see a dentist. Accordingly, Plaintiff's claims for denial of medical care against Defendant Bolton fail as a matter of law and he is entitled to summary judgment.

### 2. Defendant Mendenhall

Plaintiff alleges Defendant Mendenhall denied him medical care when she refused to put him on the list to see Defendant DeLuca for his complaints of lower back pain. This claim is simply not supported by the summary judgment record.

Every time Plaintiff submitted a request regarding his medical care, Defendant Mendenhall informed Plaintiff she had placed him on the list to be seen by Defendant DeLuca. In addition, Defendant Mendenhall submitted her affidavit clearly describing her job duties making clear she had no authority to provide any treatment unless Defendant DeLuca ordered the treatment. Likewise, she stated under oath it was completely up to Defendant DeLuca whether he would choose to see Plaintiff after any medical request. Accordingly, Plaintiff's claim for denial of medical care against Defendant Mendenhall fails as a matter of law and she is entitled to summary judgment.[3]

---

[3] Because the Court finds Defendants Bolton and Mendenhall did not violate Plaintiff's constitutional rights, it is not necessary to address the issue of qualified immunity.

### 3. Defendant DeLuca

Plaintiff claims he was denied medical care by Defendant DeLuca over a period of five months in 2016 while he was detained in the OCDC. In his verified Complaint, Plaintiff alleges the emergency room physician at the Ouachita County Medical Center entered instructions for Plaintiff to see Defendant DeLuca for a "follow up" for his diagnosed par lumbar muscle strain within two to three days after his release from the hospital on April 10, 2016. The medical records confirm Plaintiff's diagnosis and the emergency room physician's instructions. Plaintiff also states in his Complaint and in his affidavit he was never seen, evaluated, or prescribed pain medication by Defendant DeLuca during the five months he was incarcerated in 2016. (ECF Nos 1, 24).

On the other hand, Defendant DeLuca states in his affidavit he saw Plaintiff on several occasions for his claim of chronic low back pain while he was in the OCDC in 2016 and he told Plaintiff he would not prescribe him opioids or narcotics due to his suspicion Plaintiff was making false accusations. (ECF No. 28-1). Defendant DeLuca also states he declined to see Plaintiff on several occasions for his back pain during his incarceration because he had already addressed Plaintiff's issues with his back.

As previously stated, deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 105. Moreover, when an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow. *See Foulks v. Cole Cnty. Mo.*, 991 F.2d 454 (8th Cir. 1993) (liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain).

The Court finds there are genuine issues of disputed fact concerning whether Defendant DeLuca ever actually evaluated or treated Plaintiff during his incarceration in 2016 for his par

lumbar muscle strain after the emergency room physician directed him to do so. Accordingly, the Court recommends Defendants' motion for summary judgment be denied as to Plaintiff's claim against Defendant DeLuca for denial of medical care.

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Ouachita County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Ouachita County that contributed to the alleged violation of Plaintiff's constitutional rights. Thus, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

## IV. CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED in part and DENIED in part.**

I recommend Defendants' Motion for Summary Judgment be **GRANTED** as to: 1) Plaintiff's individual and official capacity claims against Defendants James Bolton and Sheryl Mendenhall; and 2) Plaintiff's official capacity claims against Defendant Dr. Joseph DeLuca. I recommend these claims be **DISMISSED WITH PREJUDICE.**

I recommend Defendants' Motion for Summary Judgment be **DENIED** as to Plaintiff's individual capacity claims against Defendant Dr. Joseph DeLuca.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of September 2019.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE